UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALLIED WORLD SPECIALTY INSURANCE COMPANY,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>DONALD KEITH ELLISON,<br><br>　　　　Defendant. | )<br>)<br>)　Case No.:<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### ALLIED WORLD SPECIALTY INSURANCE COMPANY'S COMPLAINT FOR DECLARATORY JUDGMENT

Allied World Specialty Insurance Company ("Allied World"), for its Complaint for Declaratory Judgment, alleges on knowledge, information, and belief as follows:

### NATURE OF THE ACTION

1. Allied World asserts this Complaint to obtain a judicial determination and declaration pursuant to 28 U.S.C. § 2201 *et. seq.*, as to the parties' rights and obligations under the claims-made Excess Policy No. 0308-2107 (the "Allied World Policy"), issued by Allied World to Mammoth Energy Services, Inc. ("Mammoth").  A true and correct copy of the Policy (without the application) is attached as Exhibit A.

2. The Allied World Policy generally "follows form" to a primary policy of insurance issued by Zurich American Insurance Company (the "Followed Policy"). The Followed Policy precludes coverage for **Claims** made against an **Insured** "for any deliberately fraudulent act or omission or any willful violation of any statute or regulation committed by such Insured, if a final and non-appealable adjudication adverse to such Insured in the underlying action establishes such a deliberately fraudulent act or omission or willful violation." Followed Policy, Section IV.I, as amended by Endorsement No. 12.

3. Donald Keith Ellison ("Ellison") pled guilty to a violation of 18 U.S.C. § 201(a), a felony criminal statute that requires that the defendant have an intent "either to reward some past concrete official act or acts, or to enhance the likelihood of some future act or acts." *United States v. Project on Gov't Oversight*, 616 F.3d 544, 550 (D.C. Cir. 2010) *aff'd*, 526 U.S. 398.

4. Ellison has sought coverage from Allied World for a subsequent civil action (the "Foreman Action") that is based upon the same conduct that gave rise to his guilty plea and which, as a factual predicate, directly relies on Ellison's guilty plea.

5. Allied World has accepted coverage (subject to a reservation of rights) for the other defendants who have sought coverage under the Allied World Policy for the Foreman Action. However, as a result of his guilty plea and corresponding

final non-appealable adjudication, Ellison is not entitled to any such coverage under the Allied World Policy because the Criminal Acts Exclusion applies and precludes coverage.

6. Consistent with its continued good faith, Allied World has agreed to advance **Defense Costs** to or on behalf of Ellison in connection with the Foreman Action (subject to a reservation of rights). However, under the terms of the Allied World Policy, Ellison is required to repay any such **Defense Costs** should this Court find that the Criminal Acts Exclusion applies.

7. A real, immediate, and justiciable controversy exists between the parties relating to their respective rights, duties, and obligations under the Policy and will continue to exist until such time as it is resolved by this Court.

## PARTIES

8. Plaintiff Allied World is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located in New York, New York. Therefore, Allied World is a citizen of Delaware and New York.

9. Defendant Donald Keith Ellison is a natural person and a resident of the State of Florida. He is therefore a citizen of Florida.

## JURISDICTION AND VENUE

10. This is an action for declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and Rule 57 of the Federal Rules of Civil Procedure, for the purpose of determining a question of actual controversy between the parties as described more fully below.

11. This action currently is ripe for adjudication.

12. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the plaintiff and defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391. A substantial part of the events giving rise to the claims at issue occurred in this District, in that the Policy was issued to Mammoth, a Delaware corporation, and that Ellison was the President and CEO of Cobra Acquisitions LLC ("Cobra"), a Delaware Limited Liability Company and wholly-owned subsidiary of Mammoth.

## FACTUAL ALLEGATIONS

**A.   The Policy**

14. Section 1 of the Allied World Policy provides that:

> The Insurer shall provide the Insured with insurance excess of the Underlying Policies for claims first made against the Insured during the Policy Period and reported in writing to the Insurer pursuant to the terms herein. Except as otherwise provided in this Policy, coverage

under this Policy shall apply in accordance with the terms and conditions of the Followed Policy.

Liability shall attach to the Insurer under this Policy only after the limits of liability of the Underlying Policies have been exhausted due to the payment of covered Loss by either the Underlying Insurers, the Insureds, any insurer under a difference-in-conditions policy written as specifically excess of this Policy, or any other party. This Policy shall continue in force as primary insurance only upon the exhaustion of the limits of liability of the Underlying Policies by reason of such payment and the satisfaction of any retention amount, if applicable. In no event shall this Policy provide coverage broader than that provided by the Followed Policy.

15.     "Policy Period" means November 1, 2018 to November 1, 2019. Allied World Policy, Section 4 & Allied World Policy, Declarations, Item 2.

16.     The "Named Insured" is Mammoth Energy Services, Inc. Allied World Policy, Section 4 & Allied World Policy, Declarations, Item 1.

17.     The Limit of Liability of the Allied World Policy is $10 million (in the aggregate for all coverages combined, including Defense Costs), which is excess of the total underlying limits of $20 million. Allied World Policy, Declarations, Item 3.

18.     "Followed Policy" means Policy No. DOC 0159388-02 issued by Zurich American Insurance Company for the period of November 1, 2018 to November 1, 2019. Section 4 & Policy, Declarations, Item 4. The Followed Policy is subject to a $10 million limit of liability. *Id.* A true and correct copy of the Followed Policy is attached as Exhibit B.

19. "Underlying Policies" means the Followed Policy and a first-excess policy, Policy No. ELU158632-18 issued by XL Specialty Insurance Company for the period of November 1, 2018 to November 1, 2019 (the "XL Excess Policy"). *Id.* The XL Excess Policy is subject to a $10 million limit of liability. *Id.*

20. Under the Followed Policy, **Claim** includes any "criminal proceeding against any **Insured** . . . ." and any "civil proceeding against any **Insured** . . . ." Followed Policy, Section III.B.

21. Under the Followed Policy, "All **Claims** arising out of the same **Wrongful Act** and all **Interrelated Wrongful Acts** of Insureds shall be deemed one **Claim**, and such **Claim** shall be deemed to be first made on the date the earliest of such **Claims** is first made against any **Insured**, regardless of whether such date is before or during the **Policy Period**." Followed Policy, Section V.C.

22. Under the Followed Policy, **Wrongful Acts** include "any error, misstatement, misleading statement, act, omission, neglect, or breach of duty actually or allegedly committed or attempted by any of the **Insured Persons**, individually or otherwise, in their capacity as such, or in an **Outside Position**, or with respect to Insuring Clause C, by the **Company**." Followed Policy, Section III.CC.

23. Under the Followed Policy, **Interrelated Wrongful Acts** means "all **Wrongful Acts** that have as a common nexus any fact, circumstance, situation,

6

event, transaction, cause or series of causally connected facts, circumstances, situations, events, transactions or causes."

24.     Under the Followed Policy, **Insured** includes **Insured Persons**. Followed Policy, Section III.M.

25.     Under the Followed Policy, **Insured Persons** include "any one or more natural persons who were, now are or shall become: (i) a duly elected or appointed director, Manager, officer, in-house general counsel or controller of the **Company** . . . ." Followed Policy, Section III.M.

26.     Under the Followed Policy, the **Company** includes Mammoth and its **Subsidiaries**. Followed Policy, Section III.C.

27.     Under the Followed Policy, **Subsidiary** means "any organization, including any joint venture and partnership, in which more than fifty percent (50%) of the outstanding voting securities or voting rights representing the present right to vote for election of directors, **Managers** or equivalent executives is owned or controlled, directly or indirectly, in any combination, by one or more **Companies**." Policy, Section III.BB.

28.     Under Section IV.I as amended by Endorsement No. 12 of the Followed Policy, Allied World is not liable for any **Loss** in connection with any **Claim** made against any **Insured** "for any deliberately fraudulent act or omission or any willful violation of any statute or regulation committed by such **Insured**, if

a final and non-appealable adjudication adverse to such Insured in the underlying action establishes such a deliberately fraudulent act or omission or willful violation."

### B. The Criminal Action

29. Ellison was indicted by the United States on or about September 3, 2019 in the United States District Court for the District of Puerto Rico. *See United States v. Tribble, et al.*, 3:19-cr-00541-2 (D.P.R.) (the "Criminal Action").

30. The indictment asserted counts against Ellison for (1) Conspiracy to Commit Bribery; (2) Honest Services Wire Fraud; (3) Disaster Fraud; and (4) False Statement.

31. The indictment asserted that Ahsha Nateef Tribble ("Tribble") was a Deputy Regional Administrator for the Federal Emergency Management Administration (FEMA), and that Ellison was the President of Cobra.

32. The indictment asserted that Tribble was assigned to work in Puerto Rico as part of FEMA's response to Hurricane Maria.

33. The indictment asserted that Tribble accepted things of value from Ellison, which were provided by Ellison in order to influence Tribble's performance of official acts as a FEMA employee.

34. The indictment asserted that Ellison provided Tribble with airfare, ground transportation, helicopter flights, hotel rooms, meals, entertainment expenses, and personal security services.

35. The indictment asserted that in return for such things of value, Tribble performed official acts on behalf of Cobra, including but not limited to exerting pressure on FEMA employees concerning FEMA procedures for the approval of FEMA reimbursement assistance for Cobra work.

### C. The Guilty Plea

36. On or about May 18, 2022, Ellison entered into a plea agreement with the United States.

37. As part of his plea agreement, Ellison pleaded guilty to one count of an information filed by the Government.

38. The count to which Ellison pled guilty read as follows:

> From in or about February 2018 to in our about December 2018, in the District of Puerto Rico, and elsewhere within the jurisdiction of this Court, Defendant DONALD KEITH ELLISON did directly and indirectly give, offer and promise a thing of value to AHSHA NATEEF TRIBBLE, being a public official and employee of the Federal Emergency Management Agency (FEMA), otherwise than as provided by law for the proper discharge of official duty, for and because of an official act performed and to be performed by such official.  All in violation of 18 U.S.C. § 201(c)(1)(A).

39. On December 13, 2022, U.S. District Judge Raul M. Arias-Marxuach entered a final judgment holding that Ellison "pleaded guilty" to this count and was

"adjudicated guilty." Judge Arias-Marxuach sentenced Ellison to six months and one day or imprisonment and to pay a $20,000 fine.

### D. The Foreman Action

40. The proceeding captioned *Foreman Electric Services, Inc. v. Donald Keith Ellison*, No. 2022-836-CA (Fla. Cir. Ct., Bay Cnty) (the "Foreman Action") was filed on August 17, 2022 by Foreman Electric Services Inc. ("Foreman"), a competitor of Cobra.

41. The operative complaint in the Foreman Action alleges that, as in the Criminal Action, Ellison bribed government officials at FEMA to steer work to Cobra.

42. Foreman alleges that Ellison's bribery caused harm to Cobra by steering work away from Foreman to Cobra.

43. Foreman asserts that when Ellison's "scheme came to light through federal indictment in September 2019, Ellison's plans crumbled, and the federal government seized his assets."

44. Foreman asserts that Ellison pled guilty to a violation of 18 U.S.C. 201(c) as a result of his conduct in Puerto Rico.

45. Foreman asserts that the federal government confiscated roughly half of Ellison's assets as part of his plea deal and is returning the remainder to him.

The Foreman Action seeks the those returned amounts, which Foreman characterizes as ill-gotten gains.

## REQUEST FOR COVERAGE FOR THE FOREMAN ACTION UNDER THE POLICY

46. Certain **Insureds** submitted notice of various matters involving the alleged misconduct in connection with regard to procurement in Puerto Rico following Hurricane Maria, including but not limited to the Criminal Action and the Foreman Action.

47. The insurers which issued the Followed Policy and the XL Excess Policy have represented to Allied World that the $20 million aggregate limit of liability of those policies were exhausted through payments of **Defense Costs** in connection with various of those matters.

48. In 2023, following the exhaustion of the Followed Policy and the XL Excess Policy, Ellison sought coverage from Allied World in connection with amounts incurred in the defense of the Foreman Action.

49. On February 8, 2023, counsel for Allied World sent correspondence to counsel for Ellison informing Ellison that no coverage was available for the Foreman Action because the Criminal Acts Exclusion precluded coverage.

50. On February 28, 2023, Ellison's counsel sent Allied World correspondence in which he disputed Allied World's coverage position.

51. On March 30, 2023, Allied World's counsel sent Ellison's counsel correspondence in which Allied World reaffirmed its coverage position.

52. Contemporaneously with the filing of this complaint, Allied World's counsel sent correspondence to Ellison's counsel advising that Allied World would agree to advance **Defense Costs** to or on behalf of Ellison in connection with the Foreman Action, subject to a full reservation of rights, including the right to recoup **Defense Costs** or other amounts should it be determined that Ellison is not entitled to such amounts.

## COUNT I

### For a Declaration That There Is No Coverage Under the Policy For Ellison Because The Criminal Acts Exclusion Precludes Coverage

53. Allied World realleges and incorporates by reference the foregoing allegations in this Complaint.

54. Section 1 of the Allied World Policy provides that except as otherwise provided therein, coverage under the Allied World Policy applies in accordance with the terms and conditions of the Followed Policy.

55. Section IV.I of the Followed Policy as amended by Endorsement 12 (the "Criminal Acts Exclusion") provides that Allied World is not liable for any **Loss** in connection with any **Claim** made against any **Insured** for any deliberately fraudulent act or omission or any willful violation of any statute or regulation committed by such **Insured**, if a final and non-appealable adjudication adverse to

12

such **Insured** in the underlying action establishes such a deliberately fraudulent act or omission or willful violation.

56. The Criminal Action against Ellison constitutes a **Claim** because it is a "criminal proceeding against any **Insured** . . . ." Followed Policy, Section III.B.

57. The Foreman Action against Ellison constitutes a **Claim** because it is a "civil proceeding against any **Insured** . . . ." *Id.*

58. The Criminal Action and the Foreman Action arise out of the same or **Interrelated Wrongful Acts** and are therefore deemed one single **Claim**. Followed Policy, Section V.C.

59. In connection with the Criminal Action, Ellison pled guilty to a violation of 18 U.S.C. § 201(c)(1)(A), a felony criminal statute, and admitted that he "did directly and indirectly give, offer and promise a thing of value to AHSHA NATEEF TRIBBLE, being a public official and employee of the Federal Emergency Management Agency (FEMA), otherwise than as provided by law for the proper discharge of official duty, for and because of an official act performed and to be performed by such official."

60. An order adjudicating Ellison guilty of a violation of 18 U.S.C. § 201(c)(1)(A) was entered following Ellison's guilty plea. Said adjudication was a final and non-appealable adjudication adverse to Ellison and established that

Ellison committed a deliberately fraudulent act or omission or willful violation of a statute.

61. The Foreman Action is based on the same conduct at issue in the Criminal Action and relies on the Criminal Action as a factual predicate.

62. Any **Loss** incurred in connection with the Criminal Action is or will be incurred in connection with a **Claim** made against any **Insured** for any deliberately fraudulent act or omission or any willful violation of any statute or regulation committed by such **Insured**, as established by a final and non-appealable adjudication adverse to such **Insured** in the underlying action.

63. No coverage is therefore available in connection with the Foreman Action because the Criminal Acts Exclusion precludes coverage.

## COUNT II

**For a Declaration That Allied World Is Entitled To Recoup Any Defense Costs Advanced In Connection With The Foreman Action**

64. Allied World realleges and incorporates by reference the foregoing allegations in this Complaint.

65. Section 7, as amended by Endorsement 1, of the Allied World Policy provides that "The Insurer shall have the same rights, privileges and protections afforded to the Underlying Insurer of the Followed Policy."

66. Section V.F of the Followed Policy provides that "Any advancement of **Defense Costs** shall be repaid to [Allied World] by the **Insureds** severally according to their respective interests if and to the extent the **Insureds** shall not be entitled under the terms and conditions of this policy to coverage for such **Defense Costs**."

67. For the reasons discussed above, the Criminal Acts Exclusion precludes coverage for all **Loss** incurred in connection with the Foreman Action.

68. Under the Followed Policy, **Loss** includes **Defense Costs**.

69. Because the Criminal Acts Exclusion applies, Ellison is not entitled under the terms and conditions of the Followed Policy to coverage for such **Defense Costs**. Ellison is therefore required to repay any advancement of **Defense Costs** to Allied World.

**WHEREFORE**, Allied World respectfully requests that the Court:

(A) Enter judgment that there is no coverage for Ellison for the Foreman Action;

(B) Enter judgment that Allied World is entitled to recoup any **Defense Costs** or other amounts advanced to or on behalf of Ellison in connection with the Foreman Action;

(C) Award Allied World all other relief to which it may be entitled.

## Reservation

Other terms, conditions and limitations of the Followed Policy or the Allied World Policy may operate to bar or limit coverage for some or all of the amounts

for which Ellison seeks coverage. Allied World reserves the right to raise affirmatively other terms, conditions and limitations as defenses to coverage as appropriate, including the right to amend this Complaint.

Date: July 11, 2023     **BODELL BOVÉ, LLC**

/s/ Bruce W. McCullough
Bruce W. McCullough (Del. ID 3112)
1225 N. King Street, Suite 1000
Wilmington, DE 19801-3250
Phone: (302) 655-6749
Fax: (302) 655-6827
bmccullough@bodellbove.com

*Counsel for Plaintiff*
*Allied World Specialty Insurance Company*