## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALLIED WORLD SPECIALTY INSURANCE COMPANY, | |
| Plaintiff, | |
| v. | Civil Action No. 23-751-GBW |
| DONALD KEITH ELLISON, | |
| Defendant. | |

---

Bruce W. McCullough, BODELL BOVÉ, LLC, Wilmington, DE; Matthew W. Beato, WILEY REIN LLP, Washington, DC.

*Counsel for Plaintiff*

Thomas A. Uebler, Sarah P. Kaboly, MCCOLLOM D'EMILIO SMITH UEBLER LLC, Wilmington, DE; Jacob J. Waldman, Leigha Empson, QUINN EMANUEL URQUHART & SULLIVAN, LLP, New York, NY.

*Counsel for Defendant*

**MEMORANDUM OPINION**

October 16, 2025
Wilmington, Delaware

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

This action arises from Hurricane Maria, a confessed bribery of an official at the Federal Emergency Management Agency ("FEMA"), and a disputed provision in a Directors & Officers ("D&O") insurance policy. Now pending before the Court is Defendant Donald Keith Ellison's ("Defendant" or "Mr. Ellison") Motion to Dismiss ("Motion") (D.I. 22), which has been fully briefed (D.I. 23; D.I. 26; D.I. 29). For the reasons set forth below, the Court grants Defendant's Motion.[1]

## I.    BACKGROUND

The following includes allegations from Allied's Complaint for Declaratory Judgment ("Complaint") (D.I. 1), which are taken as true for the purpose of resolving Mr. Ellison's Motion, various facts that are incorporated into the Complaint, various facts of which the Court takes judicial notice, and relevant procedural history.

From September 10, 2017 to September 17, 2017, a yet frivolous African easterly wave moved west across the Atlantic Ocean.[2] That interlude gave way to an incremental increase of

---

[1] The Court notes that neither Jacob J. Waldman nor Leigha Empson from the New York office of QUINN EMANUEL URQUHART & SULLIVAN, LLP filed a motion for *pro hac vice* admission, in contrast to the representation that such motions were "forthcoming." D.I. 22.

[2] Major Hurricane Maria - September 20, 2017, National Weather Service (last accessed Oct. 15, 2025), https://www.weather.gov/sju/maria2017. "The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). "The court . . . may take judicial notice on its own." Fed. R. Evid. 201(c)(1). Courts routinely judicially notice information from the National Weather Service. *See, e.g.*, *Corner Pocket, Inc. v. Travelers Ins.*, Civil Action No. 12-288, 2013 U.S. Dist. LEXIS 126214, at *5 n.2 (W.D. Pa. Sep. 4, 2013) (taking "judicial notice of the National Weather Service's Snow Records for Pittsburgh, Pennsylvania").

violent structures that, on September 17, 2017, became Hurricane Maria.[3]  On the morning of September 20, 2017, Hurricane Maria made landfall in Yabucoa, Puerto Rico, with sustained winds of 155 mph.[4]  Catastrophic wind and flash floods quickly ravaged the mainland, causing widespread damage and extensive power outages.[5]

The same day, President Donald J. Trump declared that Hurricane Maria constituted a major disaster for the Commonwealth of Puerto Rico and authorized FEMA to allocate federal resources in response.[6]  As relevant here, FEMA provided the Puerto Rico Electric Power Authority ("PREPA") with $9.4 billion in financial assistance to restore the electrical grid.[7]  PREPA, in turn, contracted Cobra Acquisitions LLC ("Cobra") to perform such recovery work.[8]  The former president of Cobra is Mr. Ellison.  D.I. 1 ¶ 13.  Mr. Ellison's alleged conduct in procuring Cobra's contracts with PREPA is the impetus of two legal actions: the "Criminal Action" and the "Foreman Action."

---

[3] Major Hurricane Maria - September 20, 2017, National Weather Service.

[4] *Id.*

[5] *Id.*; Appeal Analysis, FEMA (last accessed October 15, 2025), https://www.fema.gov/appeal/financial-accounting-and-reconciliation#appeal_analysis; *see Coal. for a Sustainable Delta v. FEMA*, 812 F. Supp. 2d 1089, 1093 (E.D. Cal. 2011) (holding that "a public record downloaded from a public agency's official website" is "subject to judicial notice").

[6] Initial Notice, No. FEMA-4339-DR, FEMA (Sept. 20, 2017), https://www.fema.gov/disaster-federal-register-notice/initial-notice-1159.

[7] This figure corresponds to assistance provided by September 20, 2020.  DR-4339 Hurricane Maria by the Numbers, FEMA (Nov. 2, 2021), https://www.fema.gov/fact-sheet/hurricane-maria-numbers; Appeal Analysis, FEMA.

[8] *See* FEMA Deputy Regional Administrator, Former President of Cobra Acquisitions, LLC, and Another Former FEMA Employee Indicted for Conspiracy to Commit Bribery, Honest Services Wire Fraud, Disaster Fraud, Among Other Charges, FBI (Sept. 10, 2019), https://www.justice.gov/usao-pr/pr/fema-deputy-regional-administrator-former-president-cobra-acquisitions-llc-and-another.

Criminal Action: In 2019, the United States indicted Mr. Ellison for a host of crimes, including bribery, and alleged that Mr. Ellison provided FEMA official Ahsha Nateef Tribble ("Ms. Tribble") with "helicopter flights, hotel rooms, meals," and more, in exchange for "official acts on behalf of Cobra." D.I. 1 ¶¶ 29-35. Several years later, Mr. Ellison pleaded guilty to bribing Ms. Tribble. D.I. 1 ¶ 38. On December 13, 2022, the U.S. District Court for the District of Puerto Rico sentenced Mr. Ellison to six months and one day of imprisonment and to pay a fine of $20,000. D.I. 1 ¶ 39.

Foreman Action: On August 17, 2022, Foreman Electric Services Inc. ("Foreman") filed a lawsuit against Mr. Ellison in a Florida state court. D.I. 1 ¶ 40. "The operative complaint in the Foreman Action alleges that, as in the Criminal Action, [Mr.] Ellison bribed government officials at FEMA to steer work to Cobra." D.I. 1 ¶ 41. The operative complaint also "alleges that [Mr.] Ellison's bribery caused harm to Cobra by steering work away from Foreman to Cobra." D.I. 1 ¶ 42. The Foreman Action, at least at the time of the parties' briefing, was ongoing. See D.I. 26 at 10 (admitting that the Foreman Action had "not resulted in a final adjudication").

Mr. Ellison sought insurance coverage for expenses arising from the Criminal and Foreman Actions under three D&O policies of which Cobra's parent, Mammoth Energy Services, Inc. ("Mammoth") (D.I. 1 ¶ 13), is the policyholder. The first and primary policy (the "Followed Policy") is from Zurich American Insurance Company ("Zurich") and "is subject to a $10 million limit of liability." D.I. 1 ¶¶ 2, 18. D.I. 1-2. The second or first excess policy (the "XL Excess Policy") (together with the Followed Policy, the "Underlying Policies") is from XL Specialty Insurance Company ("XL Insurance") and is also "subject to a $10 million limit of liability." D.I. 1 ¶ 19. The third or second excess policy (the "Allied Policy") (together with the Underlying Policies, "the D&O Policies") is from Plaintiff Allied World Specialty Insurance Company

("Plaintiff" or "Allied") and is likewise subject to a $10 million limit of liability. D.I. 1 ¶ 17. Before July 11, 2023, Zurich and XL Insurance "represented to Allied World that the $20 million aggregate limit of liability of" the Underlying Policies was "exhausted." D.I. 1 ¶ 47.

On July 11, 2023, Allied filed the present action against Mr. Ellison, seeking from this Court declaratory judgment that the Allied Policy, which provides coverage in accordance with the terms and conditions of the Followed Policy (D.I. 1 ¶ 14), does not cover Mr. Ellison's defense costs from the Foreman Action in light of the "Criminal Acts Exclusion" of the Followed Policy. D.I. 1. On September 13, 2024, Mr. Ellison filed his Motion to Dismiss, disagreeing with Allied's interpretation of the Criminal Acts Exclusion. D.I. 22.

## II.    LEGAL STANDARDS

### A.    Motion to Dismiss

To state a claim on which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Such a claim must plausibly suggest "facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). But the Court will "'disregard legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements.'" *Princeton Univ.*, 30 F.4th at 342 (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016)).

In evaluating a motion to dismiss, "'[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Pinnavaia v.*

*Celotex Asbestos Settlement Tr.*, 271 F. Supp. 3d 705, 708 (D. Del. 2017) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997)), *aff'd*, 2018 U.S. App. LEXIS 38873 (3d Cir. Apr. 6, 2018).  Rule 12(b)(6) requires the Court to "accept all factual allegations in a complaint as true and take them in the light most favorable to Plaintiff." *Brady v. Media*, No. 23-cv-1078-GBW, 2024 U.S. Dist. LEXIS 160991, at *4 (D. Del. Sep. 6, 2024).  "A motion to dismiss 'may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief.'" *McCrone v. Acme Markets*, 561 F. App'x 169, 172 (3d Cir. 2014) (quoting *Burlington Coat Factory*, 114 F.3d at 1420).  The "movant bears the burden of demonstrating that the complainant failed to state a claim upon which relief may be granted." *Abbott Diabetes Care, Inc. v. DexCom, Inc.*, No. 23-cv-239-KAJ, 2024 U.S. Dist. LEXIS 96985, at *4 (D. Del. May 31, 2024).

## B.    Interpretation of Insurance Contracts

The parties agree that Delaware law governs the Allied and Followed Policies. *See* D.I. 23 at 8 (relying on Delaware law); D.I. 26 at 5 (same).  The Court thus construes the Allied and Followed Policies under Delaware law. *See Astellas Pharma Inc. v. MSN Pharms. Inc.*, No. 23-689-JFB-CJB, 2025 U.S. Dist. LEXIS 10135, at *6 (D. Del. Jan. 21, 2025) ("Here, the purported contract does not contain a choice of law clause, and the parties agree Delaware law applies. So, the Court applies Delaware law as articulated by the Delaware Supreme Court." (citations omitted)); *Fox v. Rodel, Inc.*, C.A. No. 98-531-SLR, 1999 U.S. Dist. LEXIS 12246, at *15 (D. Del. July 14, 1999) ("Delaware law also permits a court to forgo an independent analysis if the contracting parties agree on what law governs.").

"Under Delaware law, interpretation of an insurance contract 'is purely a question of law.'" *EMSI Acquisition, Inc. v. RSUI Indem. Co.*, 306 F. Supp. 3d 647, 653 (D. Del. 2018) (quoting *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del.

6

1992)). "Insurance contracts, like all contracts, are interpreted as a whole and construed to give effect to the parties' intentions." *Id.* (citing *AT & T Corp. v. Faraday Capital Ltd.*, 918 A.2d 1104, 1108 (Del. 2007)). "When contract language is clear and unambiguous, it must be given its plain and ordinary meaning." *Id.* (citation omitted). "A contract is unambiguous when the court can determine the meaning of a contract without any other guide than a knowledge of the simple facts on which, from the nature of language in general, its meaning depends." *Id.* (cleaned up). "Additionally, a term is not ambiguous merely because the parties disagree on its meaning." *Id.* (citation omitted). "Rather, an ambiguity exists only if the term is reasonably or fairly susceptible of different interpretations or may have two or more different meanings." *Id.* (cleaned up).

"If an ambiguity does exist, the doctrine of *contra proferentum* requires that the language of an insurance contract be construed most strongly against the insurance company that drafted it." *Id.* (cleaned up). "Further, if an ambiguity exists, the doctrine of reasonable expectations applies, under which the policy will be read in accordance with the reasonable expectations of the insured." *Id.* (cleaned up). "Under Delaware law, the insured bears the initial burden of demonstrating that the claimed loss falls within the policy's grant of coverage." *Id.* (citation omitted). "Once the insured has met this burden, the insurer bears the burden of proving that a policy exclusion applies." *Id.* (citation omitted). "To prove an exclusion applies, the insurer must demonstrate that every allegation of the underlying complaint falls solely and entirely within specific and unambiguous exclusions from coverage." *Id.* (cleaned up). "Again, any ambiguity in an insurance contract is construed against the insurance company that drafted it." *Id.* (citation omitted).

## III.    DISCUSSION

The dispositive inquiry here is whether the Criminal Acts Exclusion bars Mr. Ellison's coverage under the Followed Policy and, therefore, the Allied Policy.  The answer to that inquiry is no as a matter of law.

The Criminal Acts Exclusion provides that Allied "shall not be liable for Loss on account of any Claim made against any Insured . . . for any deliberately fraudulent act or omission or any willful violation of any statute or regulation committed by such Insured, if a final and non-appealable adjudication adverse to such Insured in the underlying action establishes such a deliberately fraudulent act or omission or willful violation."  D.I. 1-2 § IV(I), as amended by Endorsement No. 12.

The Court examines the relevant terminology of the Criminal Acts Exclusion.  *First*, "Loss" includes "Defense Costs."  D.I. 1-2 § III(Q).  "Defense Costs" include "reasonable costs, charges, fees (including but not limited to attorney's fees and expert's fees) and expenses . . . incurred by the Insureds . . . in defending or investigating Claims."  D.I. 1-2 § III(D).  Here, "Loss" thus includes Mr. Ellison's Defense Costs of the Foreman Action (the only action at issue).  *See* D.I. 23; D.I. 26.  *Second*, "Claim" includes "civil" and "criminal proceeding[s] against" Mr. Ellison.  D.I. 1-2 § III(B)(2)-(3).  Here, "Claim" thus includes the Criminal Action (a criminal proceeding against Mr. Ellison) and the Foreman Action (a civil proceeding against Mr. Ellison).  *Third*, "Insured" includes "Insured Persons."  D.I. 1-2 § III(N).  The parties do not dispute that Mr. Ellison is an "Insured Person."  *See* D.I. 23; D.I. 26.  *Fourth*, the parties generally do not dispute that the "deliberately fraudulent act or omission or any willful violation of any statute or regulation committed by such Insured" at issue is Mr. Ellison's confessed bribery of Ms. Tribble.  *See* D.I. 23; D.I. 26.

8

Incorporating this terminology, the Followed Policy provides that Allied "shall not be liable for [Mr. Ellison's Defense Costs of the Foreman Action] on account of [the Foreman Action] . . . for [Mr. Ellison's bribery of Ms. Tribble], if a final and non-appealable adjudication adverse to [Mr. Ellison] in the underlying action establishes [Mr. Ellison's bribery of Ms. Tribble]." *See* D.I. 1-2 § IV(I), as amended by Endorsement No. 12. Since the underlying action (i.e., the Foreman Action) has not resulted in a final and non-appealable adjudication adverse to Mr. Ellison (or, at least it had not at the time of the parties' briefing), the Criminal Acts Exclusion does not bar coverage under the Followed Policy.

Allied principally contends that the Criminal and Foreman Actions are deemed a single Claim under the Followed Policy and that final adjudication of the Criminal Action constitutes final adjudication of "the underlying action" of the single Claim, thus vesting the Criminal Acts Exclusion. D.I. 26 at 6-12. Allied is partially correct. The Followed Policy provides that all "Claims arising out of the same Wrongful Act and all Interrelated Wrongful Acts of Insureds shall be deemed one Claim." D.I. 1-2 § V(C)(3); *see* D.I. 1-2 § III (defining "Wrongful Act" and "Interrelated Wrongful Acts"). Since the Criminal and Foreman Actions both arise out of the same Wrongful Act and all Interrelated Wrong Acts, i.e., Mr. Ellison's alleged bribery of Ms. Tribble, the Criminal and Foreman Actions are deemed a single Claim.

However, that the Criminal and Foreman Actions are deemed a single Claim does not render the Criminal Acts Exclusion applicable here. In particular, "*the* underlying action" (emphasis added), from which a final and non-appealable adjudication is required to bar coverage, does not and cannot refer to the Criminal Action, since the Losses at issue (i.e., the Defenses Costs of the Foreman Action) are "on account of" the Foreman Action, not the Criminal Action, and not the single Claim of the Criminal and Foreman Actions. *See RSUI Indem. Co. v. Murdock*, 248

9

A.3d 887, 906-07 (Del. 2021) (interpreting the phrase "the underlying litigation" in the insurance contract "to mean the litigation in connection with which the Insureds became legally obligated to pay on account of a claim" and denying the contention that "the relationship between the allegations of fraud in [the two underlying actions at issue] trigger[ed] the Profit/Fraud Exclusion").

Even if the Losses were "on account of" the single Claim of the Criminal and Foreman Actions, "*the* underlying action" (emphasis added) for the single Claim of the Criminal and Foreman Actions would be the Foreman Action, since the Losses for which Mr. Ellison seeks coverage are the Defense Costs of the Foreman Action. Moreover, even if the Criminal Acts Exclusion is ambiguous in that "the underlying action" could refer to both the Criminal and Foreman Actions (it does not), that "the language of [the Criminal Acts Exclusion] must be construed most strongly against [Allied]" is the *coup de grâce* to Allied's theory. *See EMSI Acquisition*, 306 F. Supp. 3d at 653.

For the foregoing reasons, the Criminal Acts Exclusion of the Followed Policy does not bar Mr. Ellison from seeking coverage under the Allied Policy for Defenses Costs of the Foreman Action. Since the Criminal Acts Exclusion is the sole basis for Allied's Complaint, the Court grants Mr. Ellison's Motion to Dismiss and dismisses Plaintiff's Complaint.[9]

## IV.    CONCLUSION

For all of the foregoing reasons, the Court grants Defendant's Motion to Dismiss (D.I. 22) and dismisses Plaintiff's Complaint for Declaratory Judgment (D.I. 1) as a matter of law.

---

[9] In light of the Court's holdings, the Court does not address all of the parties' arguments.